---

### SUPREME COURT.

#### Edmund J. Powers agt. John Shephard.

The *legislature* of this state exceeded its legitimate powers of constitutional government, when it passed an act prescribing what amount of money any citizen should pay for a substitute to represent him in the national army (*Sess. Laws* 1865, *chap.* 29, §§ 3 *and* 4).

The legislature has no more power to prescribe to a citizen what price he shall pay for a substitute in the army, than it has to prescribe what kind of shoes he shall wear, or how many courses he shall have for dinner. No government possessing such power can be called *free.*

*New York Special Term, October,* 1865.

This action is brought to recover the sum of $850 and interest, alleged to be due upon a written contract made by defendant with plaintiff, to fill the quota of (171) men called for by the United States from the town of Sparta, Livingston county, New York, under call of December 19, 1864, by the President.

Said contract was made the 9th day of March, 1865, and modified on the 21st day of March, 1865. It appears by complaint, the terms of said contract were that the plaintiff was to enlist seventeen recruits to the credit of said town, at an agreed price of $850 each, in full of bounties, premiums, &c.; that said men were furnished, and defendant paid thereon the sum of $13,600, and plaintiff brings his action for the balance.

Defendant demurred to the complaint on the ground, First. That the contract which is declared upon is in direct conflict with an act of the legislature passed February 10, 1865, prescribing the amount to be paid for substitutes, maintaining that the act is absolutely void, and the plaintiff cannot recover upon it (*Session Laws* 1865, *chap.* 29, §§ 3 *and* 4). Secondly. That it appears by allegations of complaint that defendant has already paid for each of said recruits the sum of $800, being an excess of $100 over amount allowed by statutes cited previously, to cover bounty and incidental expenses of each of said recruits, hence cannot recover further.

IRA D. WARREN, *for plaintiff.*
R. S. WOOD, *for defendant.*

CLERKE, J. If the legislature of this state has the power to prescribe to any citizen what amount of money he shall pay for a substitute to represent him in the national army, it has the power to prescribe what he shall pay for any article of commerce, for any pleasure, or any social or domestic enjoyment. I admit that the legislature is vested with all the powers of government not delegated to the United States, which have not been expressly or impliedly delegated to other departments of the government of the state, and that there are no restraints upon its political power except those which are declared by the constitution of the state. But I, nevertheless, think that it is not absolute and omnipotent, and that its power is limited to the legitimate sphere of political society. Constitutional government, under whatever form it may exist, is not based on the idea that all the conduct, and acts, and interests of a citizen, are the proper subjects of legislation. On the contrary, the tendency of such a system is to confine the action of government within as limited a sphere as is consistent with the maintenance of the peace, good order and

progress of society. It recognizes the great truth that
the most important and sacred purposes and interests of
society are not within the domain of civil law, but are
regulated and advanced by the power of self adjustment
which God has implanted in it, through the balancing and
antagonism of the various creeds and aspirations of the
individuals of whom it is composed. The moral and reli-
gious interests of society, for instance, are out of the sphere
of law, out of the sphere of political government; they
are wisely left to individual and social efforts, prompted
by benevolence and conscience. Not only are such efforts
infinitely more benignant, but they are much more effectual
than they possibly could be made through the cumbrous
machinery of state or any other political government. The
rights of imperfect obligation, to employ a legal phrase,
are much more numerous than those of perfect obligation.
So it is with the economical interests of the individuals
who compose society. Every individual, or rather the
great majority of individuals, know much better than any
public authority can know, what price he should give for
the various commodities of necessity or luxury which he
needs. The interests of the buyer on the one hand, and
of the seller on the other, will be much more likely to
adjust the proper price, than any intervening authority
can possibly do. On the contrary, the latter would inevi-
tably produce disturbance and confusion, if not distress,
as similar interference did in the markets of Paris, during
the first French revolution. I hold, therefore, that the
exercise of such power by the government was never con-
templated by the framers of our political constitution, or
by the people who ratified them, and that the power of
the legislature cannot be extended so far as to dictate to
individuals what price they shall give, or what price they
shall receive, for anything which they may want to buy
or sell. If it possessed this power for instance, of dicta-
ting what price citizens should give for any article of dress,

it could prescribe what kind of dress they should wear, and thus we may during any legislative session, hear that we had returned to the days of sumptuary laws. Formerly, in England, penal laws were enacted by its omnipotent parliament, to restrain excess in apparel; chiefly in the reigns of Edward the III, Edward the IV, and Henry the VIII, against piked shoes, short doublets, and long coats; all of which, Blackstone tells us, were repealed by statute 1 Jac. I, chapter 25. But, he remarks, as to excess in diet, there still remains one ancient statute unrepealed (10 *Edw. III, chap.* 3), which ordains that no man should be served at dinner or supper with more than two courses, except upon some great holidays, there specified, in which he may be served with three.

Can we believe that such things in any of the commonwealths of America are cognizable by law, or that the people of any of them delegated such power to their legislature? No; the legislative power in America is not omnipotent in this sense; all regulations relative to private manners and habits, and to prices and expenses, are not within the domain of civil law. The possession of such power belongs alone to absolute governments, or to parliaments which claim omnipotence. A power so infinite is inconsistent with the character and design of constitutional republican government. All the political power which the people in their sovereign capacity can consistently with this character and design exercise, has been delegated to the legislature, but nothing more. It can no more prescribe to us what price we shall pay for a coat or for a substitute in the army, than it can prescribe what kind of shoes we shall wear, or how many courses we shall have for dinner. No government possessing such power could be called free, and yet in framing the present constitution, the people declare that they establish it in gratitude to the Almighty God for their freedom.

Again, even if the legislature possessed this power, I

think an act of this kind, so far as it interferes with individual freedom of action should be strictly construed. Like penal acts, and acts in favor of corporations or particular persons, acts in derogation of common right should not be extended beyond their express words or clear import. This act prohibits the payment of a greater amount than three hundred dollars for a two years volunteer or substitute, and six hundred dollars for a three years volunteer or substitute; that is, no volunteer or substitute shall receive a larger amount for these different terms of service than the respective sums mentioned. This action, however, is not to recover money paid to volunteers or substitutes, but money which the defendant promised to pay the plaintiff for furnishing volunteers or substitutes. This money, it is to be fairly presumed, not only included the sums paid to the volunteers or substitutes, but also such sum as would be a compensation to the plaintiff for procuring the volunteers or substitutes. It certainly would not be just to expect that this plaintiff should perform services without some compensation. Like any other agent or servant, he is entitled to compensation; his services were exceedingly useful to the defendant, and could not be rendered by him without considerable labor and trouble; and the difference between the amount of the bounty allowed by the act and that promised to be paid by the defendant, may be deemed the measure of the plaintiff's compensation. It does not appear in the complaint that the volunteers or substitutes received more than the act allows.

The demurrer must be overruled, with costs, with liberty to defendant to answer within twenty days, on payment of costs of demurrer.